**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Scott Mather,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-01180-PHX-DJH<br><br>**ORDER** |

At issue is the denial of Plaintiff Jason Scott Mather's Application for Disability Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 13, "Def. Br."), and Plaintiff's Reply Brief (Doc. 14, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, "R.") and now affirms the Administrative Law Judge's decision (R. at 19–29) as upheld by the Appeals Council (R. at 1–3).

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on December 14, 2015, for a period of disability beginning on August 27, 2015. (R. at 19.) His claim was denied initially on September 30, 2016, and upon reconsideration on February 22, 2017. (R. at 19.) Plaintiff appeared before the ALJ for a hearing regarding his claim on April 11,

2019, which the ALJ denied on June 5, 2019. (R. at 19, 29.) On April 10, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: status post-pericardiectomy constructive pericarditis, congestive heart failure, right lung pleural effusion, bilateral edema of the lower extremity, and obesity. (R. at 21.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 28.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 22.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand and walk for two hours in an eight-hour workday and sit for at least six hours in an eight-hour workday. [Plaintiff] can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally crawl. [Plaintiff] cannot tolerate concentrated exposure to extreme cold, extreme heat, hazards (such as heights and machinery), fumes, odors, gases, and poor ventilation.

(R. at 22.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 28.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.  ANAYSIS

Plaintiff raises one issue before the Court. Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly weigh the opinion evidence of Nurse Practitioner ("NP") Janet Walters. (Pl. Br. at 10; R. at 26, 715–16.) The ALJ rejected NP Walters's medical opinion for four reasons: (1) NP

Walters is not considered an acceptable medical source; (2) NP Walters's opinion was inconsistent with Plaintiff's medical record and activities of daily living ("ADLs"); (3) NP Walters did not reference the objective medical evidence she used to base her opined to limitations with specificity; and (4) NP Walters's opinion was inconsistent with the state agency medical reviewers' determinations. (R. at 26.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

When Plaintiff filed his application for Disability Insurance benefits, the regulations in effect stated that only licensed physicians, licensed or certified psychologists, and certain other specialists were considered "acceptable medical sources." 20 C.F.R. § 404.1513(a). Now, NPs are considered "acceptable medical sources" under 20 C.F.R. § 404.1502(a)(7),

but only for claims filed on or after March 27, 2017. *Id.* As such, NP Walters is not considered an "acceptable medical source" and her opinion is considered testimony from an "other source." 20 C.F.R. § 404.1513(a). An ALJ is not held to the same standard in discounting an "other source" medical opinion. *See Burkett v. Saul*, 806 Fed. Appx. 509, 512 (9th Cir. 2020). An ALJ may discount "other source" opinions so long as they provide a germane reason to do so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

On May 24, 2017, NP Walters opined that Plaintiff would need to recline or lie down during a workday more than a "typical morning break, afternoon break, or lunch break." (R. at 26, 715.) NP Walters opined that Plaintiff could walk less than one city block without significant pain and needing to rest, and she opined that Plaintiff cannot sit or stand for one hour. (R. at 26, 715.) NP Walters opined that Plaintiff would need to take a break from work every hour so that he could stand or sit and each of those breaks would need to be 15-30 minutes. (R. at 26, 715.) NP Walters opined Plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, and never lift 50 pounds. (R. at 26, 715.) NP Walters opined Plaintiff would need to be absent from work more than four times a month because of his impairments. (R. at 26, 716.)

One of the reasons the ALJ gave little weight to NP Walters's opinion is because she is not an acceptable medical source under the regulations. (R. at 26.) Plaintiff argues the fact that NP Walters is not an acceptable medical source does not mean that her opinion is automatically entitled to less weight. (Pl. Br. at 11.) Because the ALJ provided three other reasons for rejecting NP Walters's opinion, Plaintiff's argument fails. The ALJ did not simply reject NP Walters's opinion because she is not an acceptable medical source, and the ALJ did not "automatically" give less weight to NP Walters's opinion. The ALJ considered NP Walters's opinion and provided several reasons, only one of which was the fact that she is not an acceptable medical source, in rejecting her opinion. (R. at 26.)

Second, the ALJ stated that NP Walters's opinion was generally inconsistent with Plaintiff's overall record and with "his ability to help care for his children and family pets,

prepare simple meals, shop in stores, count change, handle his own finances, socialize with others, play board games, get along with others, pay attention for as long as needed, follow instructions, and drive a car." (R. at 26, 58–59, 272–74.) Plaintiff argues the ALJ did not provide a logical bridge in describing how NP Walters's opinion was inconsistent with the overall records and Plaintiff's ADLs. (Pl. Br. at 12; R. at 26.) Though the ALJ did not directly link each example of Plaintiff's activities to NP Walters's opinion, the ALJ has nonetheless cited sufficient evidence in the record and statements by Plaintiff to enable this Court to reasonably discern his path and meaningfully determine that his conclusions are indeed supported by substantial evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reiterating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible). For example, NP Walters indicated that Plaintiff's impairments and symptoms would frequently interfere with his attention and concentration which would prevent him from performing simple work related activities; however, Plaintiff indicated he could pay attention for as long as he needs to and follow instructions. (R. at 274, 715.) Thus, the ALJ correctly determined Plaintiff's reported activities are inconsistent with NP Walters's opinion.

Plaintiff argues the ALJ failed to account for the limited manner in which Plaintiff was able to accomplish the tasks described in the ALJs opinion. (Pl. Br. at 15; R. at 58–59.) Plaintiff said his wife and children would help him perform household chores, he could only walk down a few isles in the store, and he could only drive to the Walmart directly behind his house. (Pl. Br. at 15; R. at 58–59.) Regardless, Plaintiff's activities suggest his functional limitations are greater than the limitations NP Walters opined to.

Third, the ALJ stated that NP Walters failed to reference the objective medical evidence with sufficient specificity. (R. at 26.) Plaintiff argues the ALJ provided a faulty summary of the medical evidence in the record to find that the opined limitations were inconsistent, and in discussing Plaintiff's medical record, the ALJ made errors that showed he did not understand the nature of Plaintiff's impairments. (Pl. Br. at 13.) Plaintiff specifically notes that the ALJ mentioned Plaintiff was hospitalized for about eleven days

after pericardiectomy procedure, but the average length of a hospital stay is only five to seven days. (Pl. Br. at 13.) But Plaintiff does not describe how the length of his hospital stay would preclude him from engaging in work-related activities. Plaintiff also says the ALJ downplayed the severity of Plaintiff's impairments by ignoring repeated notations for Plaintiff to elevate his legs. (Pl. Br. at 13; R. at 511, 679, 695, 781, 786, 788.) But the ALJ did note that Plaintiff was instructed to elevate his legs or affected extremities. (R. at 23–24.) The ALJ also noted that after April 2017, the record contained little to no recommendation for leg elevation. (R. at 24.) Plaintiff also argues that NP Walters noted in her opinion that the opinion was from Dr. Adam Brodsky's office and that in addition to submitting the opinion, all the accompanying records from two years of treatment were included. (Pl. Br. at 15–16; R. at 26.) Plaintiff does not identify specific treatment notes NP Walters used in her assessment, however. *See Karpinski v. Berryhill*, 757 Fed. Appx. 631, 632 (9th Cir. 2019) (unpublished) ("The ALJ reasonably discounted the opinion because [the doctor] did not cite any objective signs, indicate which medical evidence he relied upon, or detail the limiting effect of [the claimant's] conditions.")

Though the ALJ did not provide specific medical evidence in making this determination in relationship to rejecting NP Walters's opinion, the ALJ has nonetheless cited sufficient evidence in the record and statements by Plaintiff to enable this Court to reasonably discern his path and meaningfully determine that his conclusions are indeed supported by substantial evidence. *See Brown-Hunter*, 806 F.3d at 492. For example, the ALJ noted that in June 2016, Plaintiff's thigh edema was mostly resolved, and his ankle and scrotal edema had resolved. (R. at 23, 530.) The ALJ also explained that in September 2016 Plaintiff had no peripheral edema. (R. at 23–24, 641–42.) The ALJ went on to explain that in October 2016, Plaintiff's lower right extremity edema and his bilateral edema had improved. (R. at 24, 692.) Then the ALJ explained that in June 2017, Plaintiff was taking the medication Bumex and his edema was responding well to it, and by July and August 2018, Plaintiff's provider found "no lower extremity swelling." (R. at 24, 720, 724, 767.) Additionally, the ALJ noted that none of Plaintiff's providers found that he required a

medically necessary assistive device to walk or stand, though Plaintiff did wear compressive clothing. (R. 24, 511, 679, 695, 778, 781, 786, 788.) The ALJ also found it was significant that Plaintiff's providers found he was in no acute distress despite his symptoms. (R. at 24, 393, 397, 400, 405, 411, 421, 426, 433, 449, 456, 459, 463, 469, 472, 481, 626, 630, 634, 637, 658, 664, 669, 678, 694, 699, 704, 708, 746, 752, 757, 763, 769, 775, 780, 785.) Additionally, the ALJ further considered that Plaintiff reported improvement with various treatments and medication. (R. at 23–24.)

Finally, the ALJ found NP Walters's opinion was inconsistent with state agency consultants Dr. Brent Packer's and Dr. Alicia Blando's opinions and with the medical treatment notes from June 2017, which indicate that Plaintiff's bilateral lower edema was "much improved." (R. at 26, 767, 771.) Plaintiff argues the ALJ's finding that NP Walters's opinion contradicted the state agency consultants opinions was in direct contrast to the regulations, which state that generally, more weight should be given to a medical source opinion who examined the claimant than to the medical opinion of a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). (Pl. Br. at 16.) As Defendant properly points out, this regulation applies to medical opinions, which NP Walters did not provide because she is considered an "other source." (Def. Br. at 16.) Plaintiff's argument therefore fails.

The Court finds that the ALJ provided several germane reasons for rejecting NP Walters's opinion. Because substantial evidence supports the ALJ's finding that Plaintiff's ADLs, the medical evidence, and the state agency consultants' opinions all contradict NP Walters's opinion of Plaintiff's impairments, the Court affirms.

**IV. CONCLUSION**

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided sufficient reasons supported by substantial evidence for assigning minimal weight to NP Walters's opinion.

**IT IS THEREFORE ORDERED** affirming the June 5, 2019 decision of the Administrative Law Judge (R. at 19–29), as upheld by the Appeals Council on April 10,

2020 (*Id.* at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 8th day of March, 2021.

Honorable Diane J. Humetewa
United States District Judge